UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GINA DEMARIA,

              Plaintiff,

    v.

BIG LOTS STORES – PNS, LLC, et al.,

            Defendants.

No. 2:23-cv-00296-DJC-CKD

ORDER

Pending before the Court are Plaintiff's Motion to Remand (ECF No. 18) and Defendants' Motion to Compel Arbitration (ECF No. 7).  The Court held a hearing on both motions on August 31, 2023 and ordered Defendants to file a revised declaration for their Motion to Compel Arbitration and Plaintiff to file a sur-reply to the Motion to Compel Arbitration.  (ECF No. 27.)  Following these filings (ECF Nos. 28, 29) the Court took the matters under submission.

For the reasons set forth below, the Court will DENY Plaintiff's Motion to Remand, and GRANT Defendants' Motion to Compel Arbitration.

**BACKGROUND**

Plaintiff Gina DeMaria filed this class action against Defendants in the Solano County Superior Court on October 18, 2022, alleging various wage and meal/rest period violations under California law.  (*See generally* Compl. (ECF No. 1-1).)

1   Specifically, Plaintiff alleges: (1) failure to pay overtime wages; (2) failure to pay

2   minimum wages; (3) failure to provide meal periods; (4) failure to provide rest

3   periods; (5) waiting time penalties; (6) wage statement violations; (7) failure to

4   indemnify; (8) violation of California Labor Code section 227.3 (vacation time); and (9)

5   unfair competition.  (*Id.*)  Defendants timely removed this action on February 17, 2023,

6   under the Class Action Fairness Act ("CAFA"), codified at 28 U.S.C. § 1332(d).  (Not.

7   Removal (ECF No. 1) ¶¶ 3–5.)  Defendants argue removal is proper because: the state

8   court action is styled as a class action (*id.* ¶ 11), the proposed class contains at least

9   100 members (approximately 1,308 potential class members) (*id.* ¶ 21), there is

10   minimal diversity of citizenship between Plaintiff and Defendants (*id.* ¶¶ 22–34), and

11   the amount-in-controversy is $9,103,930.66, exceeding the $5 million requirement

12   under CAFA (*id.* ¶ 94).  Plaintiff subsequently moved to remand this action on May 17,

13   2023, arguing that Defendants failed to provide adequate evidence demonstrating

14   the amount-in-controversy exceeds $5 million (Mot. Remand (ECF No. 18) at 7) and

15   that this Court lacks equitable jurisdiction over Plaintiff's Unfair Competition Law

16   ("UCL") claim for restitution of wages (*id.* at 16).

17          Defendants have also filed a Motion to Compel Arbitration arguing Plaintiff

18   voluntarily signed a binding arbitration agreement (the "Agreement") on September

19   16, 2019, by which she agreed to arbitrate any disputes or claims related to her

20   employment or termination thereof and waived the right to pursue class claims.  (Mot.

21   Compel Arb. (ECF No. 7) at 1.)  Plaintiff opposes, arguing that Defendants failed to

22   prove that the Agreement exists, and that the Agreement, even if it exists, is

23   unconscionable and therefore unenforceable.  (Opp'n Arb. (ECF No. 11).)  Defendants

24   reply that Plaintiff has not rebutted the existence of the Agreement, any challenges to

25   the Agreement should be delegated to the arbitrator per a delegation clause in the

26   Agreement, and the Agreement is not unconscionable.  (Reply Arb. (ECF No. 12).)

27   Finally, Plaintiff argues in response that the delegation clause itself is unconscionable

28

2

1    and therefore unenforceable.  (Suppl. Opp'n Arb. (ECF No. 29).)  The Court addresses

2    each Motion in turn below.[1]

### MOTION TO REMAND

**I.   Legal Standard**

     "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant, or the defendants, to the district court of the United States for the district . . . where such action is pending."  28 U.S.C. § 1441(a).  Under CAFA, the federal courts have original jurisdiction over class actions in which the parties are minimally diverse, the proposed class has at least one hundred members, and the aggregated amount-in-controversy exceeds $5 million dollars.  *See* 28 U.S.C. § 1332(d)(2), (5).

     A defendant removing a class action filed in state court pursuant to CAFA need only plausibly allege in the notice of removal that the CAFA prerequisites are satisfied.  *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87 (2014).  If the plaintiff seeks to remand that action back to state court, however, the defendant bears the evidentiary burden of establishing federal jurisdiction under CAFA by a preponderance of the evidence.  *See id.* at 88 (quoting 28 U.S.C. § 1446(c)(2)(B)); *see also Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 978 (9th Cir. 2013).  "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c); *see also Smith v. Mylan, Inc.*, 761 F.3d 1042, 1044 (9th Cir. 2014); *Bruns v. NCUA*, 122 F.3d 1251, 1257 (9th Cir. 1997).  The Supreme Court has advised, however, "that no antiremoval presumption attends cases invoking CAFA" in part because the statute was enacted

---

[1] Pursuant to Federal Rule of Evidence 201, the Court grants Defendant's unopposed request for judicial notice of (1) the Order Granting Final Approval of Class Action Settlement in *Hubbs v. Big Lots Stores, Inc.*, No. LA CV15-01601-JAK-ASx (C.D. Cal. July 14, 2021) and (2) the Notice of Ruling Granting Defendant West Coast Liquidators, Inc.'s Motion to Compel Arbitration in *Sanford v. West Coast Liquidators, Inc.*, No. 20STCV18055 (Cal. Super. Ct. Sept. 20, 2022) ("*Sanford* Ruling") in support of their Motion to Compel Arbitration.  (*See* ECF Nos. 3, 8.)  However, the Court notes it does not take judicial notice of the truth of any facts or allegations included therein.

1    "to facilitate adjudication of certain class actions in federal court," and that "CAFA's

2    provisions should be read broadly, with a strong preference that interstate class

3    actions should be heard in a federal court if properly removed by any defendant."

4    *Dart Cherokee*, 574 U.S. at 89 (citations and quotations omitted); *see also Ibarra v.*

5    *Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).

6    **II.    Discussion**

7            The Parties do not dispute that they are diverse or that the proposed class has

8    at least one hundred members; the only issues before the Court are whether the

9    amount-in-controversy exceeds $5 million, and whether the Court must remand

10   because it lacks equitable jurisdiction over Plaintiff's UCL claim.

11           For the reasons below, remand will be denied.

12           **A.    Amount-in-Controversy**

13           When a plaintiff's complaint does not quantify damages, defendants must show

14   by a preponderance of the evidence that the amount-in-controversy exceeds the

15   jurisdictional threshold. *Canela v. Costco Wholesale Corp.*, 971 F.3d 845, 849 (9th

16   Cir. 2020).  A defendant is only required to show that it is more likely than not that the

17   plaintiff's maximum recovery could reasonably be over $5 million.  *Avila v. Rue21, Inc.*,

18   432 F. Supp. 3d 1175, 1185 (E.D. Cal. 2020).  This burden is not daunting as "a

19   removing defendant is not obligated to 'research, state, and prove the plaintiff's

20   claims for damages.'"  *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204–

21   05 (E.D. Cal. 2008) (citation omitted).  Rather, in making this showing, a removing

22   defendant "must be able to rely 'on a chain of reasoning that includes assumptions

23   . . . .'"  *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022)

24   (quoting *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015)); *see also*

25   *id.* ("[A] CAFA defendant's amount-in-controversy assumptions in support of removal

26   will always be just that: *assumptions*." (emphasis in original)).  These assumptions must

27   reflect more than "mere speculation and conjecture," *Ibarra*, 775 F.3d at 1197, and

28   they "need some reasonable ground underlying them," *id.* at 1199, but they "need not

4

1    be proven," *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019).

2    Assumptions may be reasonable if they are "founded on the allegations of the

3    complaint." *Arias*, 936 F.3d at 925. Parties may also submit evidence outside the

4    complaint, including affidavits, declarations, or other summary-judgment type

5    evidence relevant to the amount-in-controversy. *Ibarra*, 775 F.3d at 1197.

6         The plaintiff can contest the amount-in-controversy by making either a "facial"

7    or "factual" attack on the defendant's jurisdictional allegations. *Harris v. KM Indus.,*

8    *Inc.*, 980 F.3d 694, 699 (9th Cir. 2020). "A facial attack accepts the truth of the

9    [defendant's] allegations but asserts that they are insufficient on their face to invoke

10   federal jurisdiction." *Id.* (citations and quotations omitted). A factual attack, on the

11   other hand, contests the truth of the allegations themselves. *Id.* When a plaintiff

12   mounts a factual attack, they "need only challenge the truth of the defendant's

13   jurisdictional allegations by making a reasoned argument as to why any assumptions

14   on which they are based are not supported by evidence." *Id.* at 700.

15        Here, the Complaint does not specify an amount-in-controversy, thus

16   Defendants have presented their own amount-in-controversy calculation, arguing the

17   operative amount is $9,103,930.66. (Not. Removal ¶ 94.) Plaintiff mounts a factual

18   attack on Defendants' calculation disputing whether Defendants have sufficiently

19   supported the assumptions undergirding their amount-in-controversy calculation.

20   (Reply Remand (ECF No. 23) at 3.) The primary form of evidence Defendants offer in

21   support of removal is a declaration from Kim Thacker (the "Thacker Declaration"), a

22   paralegal in the legal department at Big Lots, who collected and reviewed data for

23   non-exempt employees in California employed by Big Lots between February 3, 2020,

24   and June 15, 2022[2] reflecting: (a) payroll and timekeeping records in each pay period

25   _____

26   [2] Defendants explain that the prior settlement reached between Defendants and the putative class in
     the *Hubbs* Order released claims by non-exempt employees in California against Defendants from
     February 7, 2010 through February 3, 2020, limiting the relevant time period here to any time from
27   February 3, 2020 through resolution or trial of this matter. (Not. Removal ¶¶ 15–20.) Defendants also
     explain that the number of associates and the class period is based on a similar case pending against
28   Big Lots Stores in the Eastern District of California captioned *Cornejo v. Big Lots Stores, Inc.*, No. 22-cv-

during the relevant period; (b) the number of employees in California during the relevant period; (c) the number of weeks that each employee in California worked during the relevant period; and (d) the rates of pay during the relevant period. (Thacker Decl. (ECF No. 1-3) ¶¶ 10–12.)  Based on the data collected by Thacker, Defendants calculated the amount-in-controversy as follows:

- Failure to pay overtimes wages: Defendants assumed one hour of unpaid overtime per week and multiplied the overtime rate of $22.33 (the average hourly rate of $14.89 x 1.5[3]) by 45,463 (the number of weeks worked by class members during the relevant period) to equal **$1,015,188.79**.  (Not. Removal ¶¶ 44–52.)

- Failure to pay minimum wages: Defendants assumed one hour of unpaid minimum wages per week and multiplied $13.00 (the lowest California minimum wage during the relevant period[4]) by 45,463 (the number of weeks worked by class members during the relevant period) to equal $591,019.00.  Because the Complaint also seeks liquidated damages[5] Defendants doubled this amount to equal **$1,182,038.00**.  (*Id.* ¶¶ 53–66.)

- Failure to provide meal periods and rest periods: Defendants assumed a violation rate of 40% for meal and rest period violations, i.e., two violations

---

001247-MCE-DB.  *Cornejo* was also removed from state court, and was served on Big Lots Stores on June 14, 2022, seven months before Plaintiff served the current Complaint.  (Opp'n Remand (ECF No. 22) at 3 n.1.)  Thus, the class period in this case would be at least seven months larger.  Additionally, *Cornejo* only named Big Lots Stores, Inc., while Plaintiff's Complaint names additional entities, which increases the number of putative class members.  Defendants did not incorporate these larger data points for purposes of calculating the amount in controversy for this case, such that several of their damage estimates are likely conservative.

[3] Each non-exempt employee is entitled to be paid one and one-half times her regular rate of pay for time worked in excess of 8 hours per workday and/or more than 40 hours per workweek.  Cal. Lab. Code § 510.

[4] *See* Cal. Lab. Code § 1182.12.

[5] In any action under California Labor Code sections 98, 1193.6, 1194, or 1197.1 to recover wages because of the payment of a wage less than the minimum wage fixed by an order of the commission or by statute, an employee is entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.  Cal. Lab. Code § 1194.2(a).

1    per week each, and multiplied $14.89[6] (the average hourly rate) by 45,463

2    (the number of weeks worked by class members during the relevant period)

3    by two (the number of violations) to equal $1,353,888.14 for the meal-

4    period claim and $1,353,888.14 for the rest-period claim.  Thus, in total,

5    Defendants valued these claims at **$2,707,776.28**.  (*Id.* ¶¶ 67–79.)

6    •   Failure to pay timely wages upon termination (i.e., waiting time penalties):

7        Defendants assumed a violation rate of 100% and multiplied $14.89 (the

8        average hourly rate) by 5.7 hours (the average shift length) by 30 days (the

9        maximum days for continuation of wages) by 934 (the number of potential

10       class members who are former employees) to equal **$2,378,141.46**.  (*Id.*

11       ¶¶ 80-91.)

12   •   Attorneys' fees: Defendants' set attorneys' fees[7] at 25% of the damages

13       calculated above, which total $7,283,144.53, making attorneys' fees

14       **$1,820,786.13**.  (*Id.* ¶¶ 92-94.)

15       In total, Defendants estimated the amount-in-controversy to be

16   **$9,103,930.66**.  (*Id.* ¶ 94.)

17       Plaintiff challenges this amount by arguing that (1) the Thacker Declaration is

18   insufficient by itself to support Defendants' calculations, and (2) Defendants'

19   calculations are speculative and arbitrary.

20              **1.    Sufficiency of the Thacker Declaration**

21       Plaintiff argues that the Thacker Declaration by itself is inadequate evidentiary

22   support for Defendants' calculations because Thacker "point[s] vaguely to [her] review

23   of data without identifying specifics regarding what such data might encompass,

24   where it was obtained, or why the Court should consider it trustworthy or authentic."

25   _____

26   [6] An employee who does not receive a meal or rest period to which she is entitled shall be paid one
     hour of pay at her regular rate of compensation as premium pay.  *See* Cal. Lab. Code § 226.7(b).
27   [7] Attorney's fees may be included when calculating the amount in controversy supporting CAFA
     jurisdiction.  *See Galt v. Scandinavia*, 142 F.3d 1150, 1156 (9th Cir.1998) ("We hold that where an
     underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary
28   language, such fees may be included in the amount in controversy.").

7

1   (Mot. Remand at 9.)  Courts have adopted various approaches regarding the

2   sufficiency of affidavits for supporting amount-in-controversy calculations.  *Compare*

3   *Dunn v. SHC Servs.*, No. 1:21-cv-00744-NONE-SAB, 2021 WL 5122057, at *7–10 (E.D.

4   Cal. Nov. 4, 2021) (granting remand); *Farley v. Dolgen Cal. LLC*, No. 2:16-cv-02501-

5   KJM-EFB, 2017 WL 3406096, at *3–5 (E.D. Cal. Aug. 9, 2017) (granting remand), *with*

6   *Johnson v. Bamia 2 LLC*, No. 2:22-cv-00548-KJM-AC, 2022 WL 2901579, at *2 n.2, 4

7   (E.D. Cal. July 22, 2022) (denying remand); *Bartholomew v. Goodman Mfg. Co., L.P.*,

8   No. 2:22-cv-00027-TLN-AC, 2022 WL 4355147, at *3 (E.D. Cal. Sept. 20, 2022)

9   (denying remand (collecting cases)).

10       In resolving these varied approaches, the Court takes note of the recent Ninth

11   Circuit decision in *Jauregui*, 28 F.4th at 991, 994–95.  There, the Ninth Circuit rebuked

12   the district court for its "inappropriate demand of certitude from [defendant] over its

13   assumptions used in calculating the amount-in-controversy" and turning the CAFA

14   removal process into "an unrealistic all-or-nothing exercise of guess-the-precise-

15   assumption-the-court-will-pick–even where, as here, the defendant provided

16   substantial evidence and analysis supporting its amount in controversy estimate."  28

17   F.4th at 993–94 (reversing remand when defendant provided "substantial evidence" in

18   support of its amount-in-controversy calculation in the form of a declaration from a

19   senior payroll lead who reviewed the company's payroll data and calculated the

20   potential value of the claims).  District court decisions following *Jauregui*, including

21   *Johnson* and *Bartholomew*, accordingly strike a more lenient tone than earlier

22   decisions regarding the sufficiency of declarations to support amount-in-controversy

23   analyses.  *See, e.g., Rios v. Magellan HRSC, Inc.*, No. 2:22-cv-01219-KJM-AC, 2022 WL

24   5241292, at *1 (E.D. Cal. Oct. 6, 2022) (denying remand based on amount-in-

25   controversy calculations drawn from a declaration of defendant's vice president who

26   was familiar with the company's payroll records).  Indeed, all but one of the cases cited

27   by Plaintiff in their Motion to Remand predate the Ninth Circuit's decision in *Jauregui*.

28   The only decision issued after, *Ryan v. Mission Treatment Services, Inc.*, No. 2:22-cv-

8

04013-ODW-MARx, 2022 WL 4331093 (C.D. Cal. Sep. 19, 2022), notably fails to address *Jauregui* whatsoever.

As the Thacker Declaration is similar to the declarations relied on in *Jauregui* and cases following *Jauregui*, the Court finds it sufficient to support Defendants' amount-in-controversy analysis.

### 2.    Reasonableness of Defendants' Calculations

Plaintiff alleges that Defendants unreasonably assume one hour of unpaid minimum wages and overtime each week and a 40% meal and rest break violation rate given that Plaintiff uses language limiting the frequency of the violations throughout the Complaint. (Mot. Remand at 10–13.)  Plaintiff similarly alleges the 100% violation rate for waiting time penalties is unsupported by the Complaint. (*Id.* at 13–14.)  Finally, Plaintiff alleges Defendants have presented no justification for assuming attorneys' fees amount to 25% of the damages award. (*Id.* at 15–16.)

To assess assumptions underlying amount-in-controversy calculations, *Jauregui* dictates that:

> Where a defendant's assumption is unreasonable on its face without comparison to a better alternative, a district court may be justified in simply rejecting that assumption and concluding that the defendant failed to meet its burden.  But often . . . the reason a defendant's assumption is rejected is because a different, better assumption is identified.  Where that's the case, the district court should consider the claim under the better assumption–not just zero-out the claim.

28 F.4th at 996.  Following this directive, the Court has analyzed Defendants' assumptions to determine if any are evidently unreasonable or baseless and has considered better alternatives where necessary. *Id.*; *see also Ibarra*, 775 F.3d at 1199 ("[A]ssumptions cannot be pulled from thin air but need some reasonable ground underlying them.").  Plaintiff did not initially provide alternative assumptions in her Motion to Remand.  However, when prompted at the hearing, Plaintiff's counsel proposed a 1–2% violation rate for the overtime, minimum wage, meal and rest break,

1    and waiting time violations.  The Court finds that Plaintiff's counterproposal is patently

2    unreasonable as it is inconsistent with the allegations in the Complaint, including that

3    there is a practice and policy on the part of Defendants.  (*See* Compl. ¶¶ 33, 68.)  As

4    Plaintiff does not provide a "better assumption," the Court has disregarded Plaintiff's

5    counterproposal in its assessment below.

6    **a.  Defendants' Overtime Calculation is Unreasonable**

7    Defendants estimate one hour of unpaid overtime per week for each class

8    member based on Plaintiff's allegation that "Defendants have, at times, failed to pay

9    overtime wages to Plaintiff and Class Members, or some of them, in violation of

10    California state wage and hour laws as a result of . . . among other things, failing to

11    accurately track and/or pay for all minutes actually worked at the proper overtime rate

12    of pay." (Compl. ¶ 15.)  Each non-exempt employee is entitled to be paid one and

13    one-half times their regular rate of pay for time worked in excess of 8 hours per

14    workday and/or more than 40 hours per workweek.  Cal. Lab. Code § 510.  However,

15    Defendants calculated the average shift length for non-exempt employees to be 5.7

16    hours.  (*See* Thacker Decl. ¶ 12.d.)  This average shift length falls far short of the shift

17    length required for overtime to accrue, i.e., 8 hours.  Even assuming class members

18    were at times required to work off-the-clock, Defendants currently assume only one

19    hour per week of unpaid minimum wages per class member.  One hour of unpaid

20    minimum wages, when added to an average shift length of 5.7 hours, does not readily

21    support a conclusion that there was also one hour of unpaid overtime per week for

22    each class member.  Thus, the Court rejects Defendants' overtime calculation as being

23    unreasonable on its face.

24    **b.  Defendants' Minimum Wage and Meal and Rest Break**

25    **Calculations are Reasonable**

26    Defendants' minimum wage and meal and rest break calculations are

27    reasonable.  Plaintiff pleads that "Defendants have, at times, failed to pay minimum

28    wages to Plaintiff and Class Members, or some of them . . . [by] failing to accurately

1   track and/or pay for all hours actually worked at their regular rate of pay that is above

2   the minimum wage." (Compl. ¶ 16.)  Plaintiff further alleges "Defendants have, at

3   times failed to provide Plaintiff and Class Members, or some of them, full, timely thirty

4   (30) minute uninterrupted meal period[s]" and "have, at times, failed to authorize and

5   permit Plaintiff and Class Members, or some of them, to take rest periods of at least

6   ten (10) minutes." (*Id.* ¶¶ 17–18.)

7         On the one hand, Plaintiff uses limiting language throughout the Complaint by

8   stating Defendants "at times" failed to pay for all hours worked or provide meal and

9   rest periods, indicating this may have been a sporadic rather than regular failing.

10   *Compare Johnson*, 2022 WL 2901579, at *3 (defendants' assumption that class

11   members missed two meal breaks and two rest breaks per week was reasonable given

12   that plaintiff alleged putative class members were "regularly denied" legally compliant

13   breaks and were "often" or "routinely" unable to take compliant breaks due to

14   defendants' "uniform policies/practices") *with Duran v. Allegis Global Solutions, Inc.*,

15   No. 20-cv-09025-JD, 2021 WL 3281073, at *3 (N.D. Cal. Aug. 2, 2021) (where a

16   complaint includes limiting language to describe the rate of violations, such as "at

17   times" or "on occasion," and defendant fails to provide any evidence to suggest

18   otherwise, even an assumption of 20% is unreasonable).

19         On the other hand, Defendants account for the limiting language used in the

20   Complaint by assuming only one hour per week of unpaid minimum wages and

21   applying only a 40% violation rate for meal and rest break periods.  Defendants also

22   use the lowest minimum wage mandated during the applicable period and use a

23   narrower time period and class size than what is pled in the Complaint.[8]  While Plaintiff

24   uses language potentially limiting recovery to only some class members, i.e., "or some

25   of them," "or" indicates that all class members could conceivably recover, and "the

26   amount in controversy reflects the maximum recovery the plaintiff could reasonably

27

28   [8] *See* n.2 *supra.*

11

1  recover." *Arias*, 936 F.3d at 927.  Further, courts in this district have found an

2  assumption of one hour of unpaid minimum wages per employee per workweek and

3  a 20–60% violation rate for meal and rest breaks to be reasonable, even if a complaint

4  uses limiting language, when a plaintiff alleges a policy or practice on the part of

5  defendants.  *See, e.g., Cabrera v. South Valley Almond Co., LLC*, No. 1:21-CV-00748-

6  AWI-JLT, 2021 WL 5937585, at *8 (E.D. Cal. Dec. 16, 2021) ("[A]ssumptions of one

7  hour of unpaid overtime per week and one hour of unpaid minimum wages per week

8  are consistent with allegations that violations occurred 'at times' and 'on occasion,'

9  particularly [when a] Complaint alleges that the Labor Code violations at issue [ ] are

10  due to 'policies and/or practices' on the part of [d]efendants."); *Sanchez v. Abbott*

11  *Lab'ys*, No. 2:20-cv-01436-TLN-AC, 2021 WL 2679057, at *5 (E.D. Cal. June 30, 2021)

12  (collecting cases and applying a 40% violation rate for meal break claims and 20%

13  violation rate for rest period claims based on the parties' arguments and the

14  allegations in the complaint).  Here, Plaintiff explicitly alleges a policy or practice on

15  the part of Defendants.  (*See* Compl. ¶ 33 ("Class Members, as further described

16  therein, have been damaged and are entitled to recovery by reason of Defendants'

17  policies and/or practices that have resulted in the violation of the Labor Code at times,

18  as set out herein.").)

19        Given that Plaintiff alleges a policy/practice by Defendants, Defendants'

20  violation rates for the minimum wage and meal and rest break calculations account for

21  limiting language in the Complaint, and the violation rates fall within the range

22  approved by other courts, the Court finds that that Defendants' assumptions are

23  reasonable on their face.  Together, the minimum wage and meal and rest break

24  calculations total $3,889,814.28.[9]

25

26  [9] Even if the Court were to adjust the meal and rest period violation rate down to 20%, *see, e.g.,*
*Ramirez v. Cornerstone Bldg. Brands*, No. 2:21-CV-01017-MCE-JDP, 2022 WL 1556664, at *1 (E.D. Cal.
27  May 17, 2022) (20% violation rate was reasonable where complaint contained allegations of violations
occurring "often" or "from time to time" as well as violations resulting from "company-wide policies and
28  procedures"), the minimum wage and meal and rest break calculations total would be $2,535,926.14.

1      **c.   Defendants' Waiting Time and Attorneys' Fees Calculations**

2           **are Reasonable**

3           Defendants' calculation of penalties for their alleged failure to timely pay wages

4    to discharged or quitting employees under Labor Code section 203 (known as

5    "waiting time penalties") is similarly reasonable.  Critically, the recovery of waiting time

6    penalties does not hinge on the number of violations committed; rather Defendants

7    "need only have caused and failed to remedy a single violation per employee for

8    waiting time penalties to apply."  *Noriesta v. Konica Minolta Bus. Solutions U.S.A.*, No.

9    ED CV 19-0839-DOC-SPx, 2019 WL 7987117, at *6 (C.D. Cal. June 21, 2019); *see also*

10   Cal. Lab. Code § 203.  Based on Defendants' assumptions regarding the minimum

11   wage and meal and rest break violations, which the Court has found to be reasonable,

12   it is also reasonable to assume all or nearly all employees in the class would be

13   entitled to recovery of waiting time penalties.  *See Cavada v. Inter-Continental Hotels*

14   *Grp.*, No. 19cv1675-GPC-BLM, 2019 WL 5677846, at *9 (S.D. Cal. Nov. 1, 2019)

15   ("Because the waiting time penalties are also based on the one missed meal and one

16   missed rest breaks, a 100% violation rate . . . is based on a reasonable assumption");

17   *Noriesta*, 2019 WL 7987117, at *6 (holding that if "Defendant had a 'pattern and

18   practice' of refusing to grant meal and rest breaks or pay class members for all hours

19   worked, then it is likely that all or nearly all class members experienced [waiting time]

20   violations")).  Defendants' waiting time penalties calculation, $2,378,141.46, plus the

21   minimum wage and meal and rest break calculation, $3,889,814.28, comfortably

22   exceeds the amount-in-controversy requirement even without attorneys' fees.

23           Even assuming the 100% violation rate were not reasonable, district courts have

24   found that violation rates of 25% to 60% for waiting time penalties can be reasonably

25   assumed as a matter of law based on "pattern and practice" or "policy and practice"

26   allegation.  (*See* Compl. ¶ 68 ("Defendants . . . intentionally adopted policies or

27   _____

28   Along with waiting time penalties of $2,378,141.46 and attorney's fees of about 25%, which the Court
     finds below to be reasonable, the amount-in-controversy surpasses $5 million.

1   practices incompatible with the requirements of Labor Code sections 201 and 202

2   resulting in the failure, at times, to pay all wages . . . .");) *see also Avila*, 432 F. Supp. 3d

3   at 1189 (finding "a violation rate of 40%–a median between 25% and 60%–to be

4   reasonable" for waiting time penalties).  Applying a 25% rate, the waiting time

5   penalties total $595,808.46.  *See, e.g., Ramirez v. HV Glob. Mgmt. Corp.*, No. 21-cv-

6   09955-BLF, 2022 WL 1210402, at *6 (N.D. Cal. Apr. 25, 2022) (applying 25% violation

7   rate and rejecting defendants proffered 100% violation rate for waiting time penalties,

8   where "Defendants provide little justification for assuming a 100% violation rate").

9   While this alone would be insufficient to meet the amount-in-controversy requirement,

10  as the minimum wage, meal and rest period, and waiting time penalties calculations

11  combined would total $4,485,622.74, attorneys' fees may also be included in

12  determining the amount-in-controversy where underlying statutes authorize an award

13  of attorneys' fees, which is the case here.  *Galt G/S*, 142 F.3d at 1155–56; *see also*

14  *Fritsch v. Swift Transp. Co. of Ariz.*, 899 F.3d 785, 794 (9th Cir. 2018).  The benchmark

15  for class action attorneys' fees in the Ninth Circuit is 25%, with 20–30% as the usual

16  range.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  If the

17  amount-in-controversy is $4,485,622.74, attorneys' fees in the amount of $514,377.25,

18  or a little over 10%, would be sufficient to meet the amount-in-controversy.  It is

19  reasonable to assume that attorneys' fees would exceed 10%.

20        Thus, the Court holds the amount-in-controversy requirement is satisfied.

21        **B.    Equitable Jurisdiction**

22        Plaintiff alleges another basis for remand of this action is the Court's lack of

23  federal equitable jurisdiction over Plaintiff's claim under California's UCL for restitution

24  of unpaid wages.  (Mot. Remand at 16–18.)  Equitable relief in federal court is subject

25  to restrictions, most relevantly here that "a plain, adequate and complete remedy at

26  law must be wanting."  *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 840 (9th Cir.

27  2020) (quoting *Guar. Tr. Co. v. York*, 326 U.S. 99, at 105–06 (1945)).  This rule applies

28  to all claims for equitable relief in federal courts, regardless of whether federal or state

1  substantive law supplies the claimed right to relief.  *See id.* at 841.  Thus, "if the

2  plaintiff cannot show a lack of adequate remedies at law, the court lacks equitable

3  jurisdiction over the UCL claim." *Guthrie v. Transamerica Life Ins. Co.*, 561 F. Supp. 3d

4  869, 875 (N.D. Cal. 2021).  Plaintiff has not pled an inadequate remedy at law.

5         However, "[e]quitable jurisdiction is distinct from subject matter jurisdiction,"

6  *Treinish v. iFit, Inc.*, No. CV 22-4687-DMG-SKx, 2022 WL 5027083, at *4 (C.D. Cal. Oct.

7  3, 2022), and a motion to remand a case "on the basis of any defect other than lack of

8  subject matter jurisdiction must be made within 30 days after the filing of the notice of

9  removal . . . ."  28 U.S.C. § 1447(c).  Plaintiff did not bring this motion until well after 30

10  days following removal, making her motion to remand the UCL claim untimely.

11         In addition, because section 1447(c) is restricted to subject matter jurisdiction, it

12  does not provide an adequate legal justification to remand this case.  *See Treinish*,

13  2022 WL 5027083, at *4.  The Ninth Circuit has never explicitly held that a failure to

14  allege an inadequate legal remedy deprives a court of subject matter jurisdiction over

15  claims for equitable relief, and district courts in the Ninth Circuit have repeatedly

16  dismissed claims for equitable relief under Rule 12(b)(6), not based on a lack of

17  jurisdiction.  *Lopez v. Cequel Commc'ns., LLC*, No. 2:20-cv-02242-TLN-JDP, 2021 WL

18  4476831, at *2 (E.D. Cal. Sept. 29, 2021) (collecting cases).  The single case

19  remanding UCL claims in lieu of dismissal involved a situation where only equitable

20  claims remained, and therefore remand was the only option for those claims to be

21  heard.  *See Guthrie*, 561 F. Supp. 3d at 878.  This is distinct from the instant case in

22  which the Court has valid subject matter jurisdiction under CAFA.

23         Thus, this Court is not compelled to remand this matter based on Plaintiff's UCL

24  claim.

25                    **MOTION TO COMPEL ARBITRATION**

26  **I.     Legal Standard**

27         The Federal Arbitration Act ("FAA") governs arbitration agreements.  9 U.S.C.

28  § 2.  The FAA affords parties the right to obtain an order directing that arbitration

1     proceed in the manner provided for in the agreement. 9 U.S.C. § 4. To decide on a

2     motion to compel arbitration, a court must determine: (1) whether a valid agreement

3     to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute

4     at issue. *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1017 (9th Cir. 2016).

5     "Arbitration is a matter of contract, and the FAA requires courts to honor parties'

6     expectations." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 351 (2011). However,

7     parties may use general contract defenses to invalidate an agreement to arbitrate.

8     *See id.* at 339. Thus, a court should order arbitration of a dispute only where satisfied

9     neither the agreement's formation nor enforceability or applicability to the dispute is

10     in issue. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299–300 (2010).

11     "Where a party contests either or both matters, 'the court' must resolve the

12     disagreement," *id.*, because a party cannot be required to submit to arbitration any

13     dispute it has not agreed to." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th

14     Cir. 2014) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S.

15     574, 582 (1960)). If a valid arbitration agreement encompassing the dispute exists,

16     arbitration is mandatory. *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

17         Under section 3 of the FAA, a court, "upon being satisfied that the issue

18     involved . . . is referable to arbitration, shall on application of one of the parties stay

19     the trial of the action until such arbitration has been had in accordance with the terms

20     of the agreement." 9 U.S.C. § 3.

21     **II.   Discussion**

22         For the reasons set forth below, the Court finds that the evidence submitted by

23     Defendants proves the existence of the Agreement. The Court also finds that the

24     Agreement contains a valid clause which delegates questions of arbitrability to the

25     arbitrator, and that this clause is neither procedurally nor substantively

26     unconscionable. Thus, the delegation clause will be enforced, and this matter will be

27     stayed pending the arbitrator's decision concerning unconscionability. (*See* Mot.

28     Compel Arb. at 13 (requesting the Court stay this case pending arbitration);) *see also*

1    *Whitney v. Suburban Propane, L.P.*, No. 2:22-cv-00633-WBS-AC, 2022 WL 2789950, at

2    *5 (E.D. Cal. July 15, 2022) (ordering parties to arbitrate gateway issues of arbitrability,

3    unconscionability, and lack of mutuality in accordance with the delegation clause in

4    their agreement, and staying the matter pending arbitration); *Abaya v. Total Acct.*

5    *Recovery, LLC*, No. 2:15-cv-01269-MCE-CKD, 2016 WL 3407783, at *3 (E.D. Cal. June

6    20, 2016) (staying case pending completion of arbitration).

7          **A.   Existence of Valid Arbitration Agreement**

8          Defendants allege that Plaintiff electronically signed the Agreement, titled "Big

9    Lots Mutual Arbitration Agreement for Current Associates," on September 16, 2019.

10   (Mot. Compel Arb. at 6.)  As proof of this, they offer a declaration of Brett Tiberi (the

11   "Tiberi Declaration"), a compensation and data analytics manager employed by Big

12   Lots who has "personal knowledge of the process by which Big Lots Stores provides

13   certain employment-related documents to associates." (Tiberi Decl. (ECF No. 7-3)

14   ¶¶ 1–2.) Tiberi states that Big Lots maintains an online database called Big Lots

15   University where employees access and acknowledge employment-related

16   documents using a unique employee ID assigned to each associate and a private

17   password. (*Id.* ¶ 3.) Big Lots uploaded the Agreement to Big Lots University in 2019,

18   and associates were provided with a link to read the Agreement, instructed to read

19   the entire document before acknowledging it, and encouraged to contact human

20   resources if they had any questions. (*Id.* ¶¶ 6–7.) Once associates read the

21   Agreement, they had to affirmatively click a box to indicate their acknowledgement.

22   (*Id.* ¶ 7.) By clicking the box, associates represented that: (1) they agreed to the terms

23   of the Agreement; (2) they entered into the Agreement voluntarily and had adequate

24   time to review the terms; and (3) they agreed to sign the Agreement electronically and

25   that their electronic signature was legally binding and the equivalent of a handwritten

26   signature. (Tiberi Decl. Ex. 2 (ECF No. 28).) If the associate accepted the terms of the

27   Agreement, it would appear as "completed" on the associate's eLearning history.

28   (Tiberi Decl. ¶ 8.) Tiberi accessed Plaintiff's eLearning history by searching the Big

1    Lots University database, and her history demonstrated that she electronically signed

2    the Agreement on September 16, 2019.  (*Id.* ¶ 11; Tiberi Decl. Ex. 3 (ECF No. 7-3).)

3    Plaintiff counters that she has no recollection of signing the Agreement, and that

4    Tiberi lacks personal knowledge of Plaintiff signing the Agreement.  (Opp'n Arb. at 4;

5    DeMaria Decl. (ECF No. 11-1) ¶¶ 4–9.)

6         The party seeking to compel arbitration bears the burden of proving by a

7    preponderance of the evidence the existence of an agreement to arbitrate.  *Ashbey v.*

8    *Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015).  In resolving a

9    motion to compel arbitration, "[t]he summary judgment standard [of Federal Rule of

10   Civil Procedure 56] is appropriate because the district court's order compelling

11   arbitration 'is in effect a summary disposition of the issue of whether or not there had

12   been a meeting of the minds on the agreement to arbitrate.'"  *Hansen v. LMB Mortg.*

13   *Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021) (quoting *Par-Knit Mills, Inc. v. Stockbridge*

14   *Fabrics Co.*, 636 F.2d 51, 54 n.9 (3d Cir. 1980)).  Under this standard of review, "[t]he

15   party opposing arbitration receives the benefit of any reasonable doubts and the

16   court draws reasonable inferences in that party's favor, and only when no genuine

17   disputes of material fact surround the arbitration agreement's existence and

18   applicability may the court compel arbitration."  *Smith v. H.F.D. No. 55, Inc.*, No. 2:15-

19   cv-01293-KJM-KJN, 2016 WL 881134, at *4 (E.D. Cal. Mar. 8, 2016).  "A material fact is

20   genuine if 'the evidence is such that a reasonable jury could return a verdict for the

21   nonmoving party.'"  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 500 (9th Cir. 1992)

22   (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Conversely,

23   "where the record taken as a whole could not lead a rational trier of fact to find for the

24   nonmoving party, there is no 'genuine issue for trial.'"  *Id.* (quoting *Matsushita Elec.*

25   *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

26        Plaintiff's claim that an arbitration agreement does not exist between the Parties

27   lacks merit.  First, Plaintiff never expressly denied the existence of the Agreement.

28   Rather, Plaintiff alleged only that she had no recollection of receiving and signing the

18

1   Agreement.  However, "nothing in the law requires a party to remember having

2   contracted for the agreement to be valid," nor is an "employer required to explain the

3   details of [a] contract" to a plaintiff or "force [them] to read it."  *Pinto v. Squaw Valley*

4   *Resort, LLC*, No. 2:17-cv-02281-MCE-CKD, 2018 WL 5630702, at *2 (E.D. Cal. Oct. 31,

5   2018).  Thus, the fact that Plaintiff "does not remember signing [the] Agreement . . . is

6   not sufficient" to challenge its existence.  *Garcia v. NRI USA, LLC*, No. 2:17-CV-08355-

7   ODW-GJS, 2018 WL 3702293, at *3 (C.D. Cal. Aug. 1, 2018); *see also Chalian v. CVS*

8   *Pharm., Inc.*, No. CV 16-08979-AB-AGRx, 2017 WL 6940520, at *2 (C.D. Cal. Oct. 17,

9   2017) (finding that the electronic signature on an agreement made it enforceable

10  despite plaintiff's statement that she did not recall signing); *Bolanos v. Khalatian*, 231

11  Cal. App. 3d 1586, 1590 (1991) (enforcing arbitration agreement despite plaintiff

12  declaring that she did "not remember signing it").

13          Second, Plaintiff's implication that she did not sign the Agreement is

14  contradicted by Tiberi's Declaration.  Tiberi states that Plaintiff's eLearning history

15  demonstrates she logged into the Big Lots University portal and checked a box stating

16  she agreed to the terms of the Agreement and to be bound by the Agreement.

17  (Tiberi Decl. ¶ 11.)  Under California law, electronic signatures are acceptable if they

18  are "the act of the person," which "may be shown in any manner, including a showing

19  of the efficacy of any security procedure" that applies to the electronic signature

20  process.  Cal. Civ. Code § 1633.9(a).  Every Big Lots employee was assigned a unique

21  employee ID and created their own secure password for the Big Lots University portal.

22  (Tiberi Decl. ¶ 3.)  Thus, the record demonstrates Plaintiff signed the Agreement,

23  thereby acknowledging her review and assent to the terms.

24          Further, the Tiberi Declaration establishes Tiberi has personal knowledge that a

25  valid Agreement exists.  Under Federal Rule of Evidence 602, a witness may testify to a

26  matter only if evidence is introduced sufficient to support a finding that the witness

27  has personal knowledge of the matter; such evidence may consist of the witness's

28  testimony.  Fed. R. Evid. 602.  Here, Tiberi provides information about his position as a

1  Compensation and Data Analytics Manager, his access to records maintained by

2  Defendants in its usual course of business, the process by which associates, including

3  Plaintiff, created profiles and login information on the Big Lots University portal, and

4  how Plaintiff would have accessed and signed the Agreement.  (Tiberi Decl. ¶¶ 1–9.)

5  This information lays a proper foundation and establishes Tiberi's personal knowledge

6  of the Agreement attached to his Declaration.  *See Mitchell v. Ecolab, Inc.*, No. 1:22-

7  cv-01088-EPG, 2023 WL 2666391, at *4–5 (E.D. Cal. Mar. 28, 2023) (a witness's review

8  of business records and familiarity with company procedures laid a proper foundation

9  and established their testimony about an arbitration agreement's existence was based

10 on personal knowledge); *see also Rizvanovic v. United Parcel Service, Inc.*, No. 1:21-

11 cv-01278-CDB, 2023 WL 346800, at *6 (E.D. Cal. Jan. 20, 2023) (same); *Wright v.*

12 *Sirius XM Radio Inc.*, No. SACV 16-01688-JVS-JCGx, 2017 WL 4676580, at *2 (C.D.

13 Cal. June 1, 2017) (same).

14       Thus, the Court finds that Defendants have shown by a preponderance of the

15 evidence the Agreement exists.

16       **B.    Delegation Clause**

17       Defendants argue that the Agreement signed by Plaintiff contains the following

18 delegation clause:

19       This Agreement applies to all Covered Claims regardless of
20       the date they accrued, and the terms of this Agreement
         remain in effect after your employment relationship with Big
21       Lots terminates.  Covered Claims also include any dispute
         relating to the interpretation, applicability, enforceability, or
22       formation of this Agreement, including but not limited to any
         claim that all or part of this Agreement is void or voidable.
23       The arbitrator has exclusive authority to decide such
24       disputes, including but not limited to disputes regarding the
         arbitrability of Covered Claims.
25

26 (Tiberi Decl. Ex. 1 (ECF No. 7-3), at 1; Reply Arb. at 4.)

27       The Supreme Court has recognized that parties can agree to arbitrate threshold

28 issues concerning the arbitration agreement.  *Rent-A-Center, West, Inc. v. Jackson*,

20

561 U.S. 63, 68–69 (2010) (quotations omitted).  In general, parties may delegate threshold questions to the arbitrator, if by "clear and unmistakable evidence," the parties have chosen to do so.  *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *see also Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) (holding that a clause in an arbitration agreement, which specified that "the validity or application" of the agreement was to be resolved through arbitration, constituted a clear and unmistakable agreement to delegate issues of arbitrability).  The delegation clause here clearly delegates the Parties' dispute concerning the enforceability of the Agreement to the arbitrator.

Further, the Ninth Circuit has held that incorporation of the American Arbitration Association ("AAA") rules in an arbitration agreement "constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan*, 796 F.3d at 1130.[10]  The agreement explicitly incorporates the AAA rules, further weighing in favor of upholding the delegation clause.  (*See* Tiberi Decl. Ex. 1, at 2;) *see also LaCross v. Knight Transp. Inc.*, No. CV-15-00990-PHX-JJT, 2016 WL 11527434, at *3 (D. Az. Sept. 22, 2016) ("[T]he delegation clause here, in addition to incorporating the AAA rules, explicitly provides that any dispute . . . is subject to arbitration.  The delegation provision was thus clear and unmistakable with regard to the intent of the parties–even if unsophisticated–to arbitrate the enforceability of the Arbitration Agreement.").

Plaintiff argues that the delegation clause is unenforceable as it is unconscionable.  (Suppl. Opp'n Arb. at 3–5.)  Under California law, unconscionability has a procedural element and a substantive element.  *See OTO, LLC v. Kho*, 8 Cal. 5th

---

[10] While *Brennan* addressed an agreement executed between "sophisticated" parties, the court stated that its holding "should not be interpreted to require that the contracting parties be sophisticated or that the contract be 'commercial' before a court may conclude that incorporation of the AAA rules constitutes 'clear and unmistakable' evidence of the parties' intent," 796 F.3d at 1130, and courts in the Ninth Circuit have upheld Brennan's rule with respect to non-sophisticated parties.  *See McLellan v. Fitbit, Inc.*, No. 3:16-cv-00036-JD, 2017 WL 4551484, at *2 (N.D. Cal. Oct. 11, 2017) ("The greater weight of authority has concluded that that the holding of [Brennan] applies similarly to non-sophisticated parties." (citations omitted)).

1    111, 125 (2019); *Iyere v. Wise Auto Grp.*, 87 Cal. App. 5th 747, 759 (2023).  The

2    procedural element addresses the circumstances of contract negotiation and

3    formation, focusing on oppression and surprise due to unequal bargaining power,

4    while the substantive element pertains to the fairness of an agreement's actual terms

5    and whether they are overly harsh or one-sided.  *OTO*, 8 Cal. 5th at 125; *Iyere*, 87 Cal.

6    App. 5th at 759.  While both the procedural and substantive elements must be

7    present to establish unconscionability, they need not be present in the same degree;

8    the more one element is present, the less present the other element need be.  See

9    *OTO*, 8 Cal. 5th at 125–26; *Iyere*, 87 Cal. App. 5th at 759.

10          Procedurally, Plaintiff argues that the delegation clause is unenforceable

11   because it was included in a "take it or leave it" agreement which gave no indication

12   that negotiation was permitted and failed to call attention to the clause, (Suppl. Opp'n

13   Arb. at 3–4,) relying heavily on the Ninth Circuit's decision in *Lim v. TForce Logistics,*

14   *LLC*, 8 F.4th 992, 1001 (9th Cir. 2021).

15          Plaintiff's argument is unavailing.  First, while Plaintiff is correct the Agreement

16   was not subject to negotiation, Plaintiff's continued employment at Big Lots was not

17   conditioned on signing the Agreement.  Rather, the Agreement stated quite clearly on

18   the first page "[i]t is your voluntary choice whether or not to sign this Agreement.  Your

19   employment with Big Lots will not be affected by whatever choice you make." (Tiberi

20   Decl. Ex. 1, at 1.)  The signature page also stated that by signing the Agreement, an

21   associate would be voluntarily entering into the Agreement.  (Tiberi Decl. Ex 2.)

22   Plaintiff has presented no evidence that she was told signing the Agreement was a

23   condition of her continued employment, or that she was otherwise pressured into

24   signing.  Thus, Plaintiff had a meaningful choice whether to agree to the terms of the

25   Agreement, including the delegation clause.  *See Mohamed v. Uber Techs., Inc.*, 848

26   F.3d 1201, 1212 (9th Cir. 2016) ("An arbitration agreement is not adhesive if there is

27   an opportunity to opt out of it."); *cf. Lim*, 8 F.4th at 997 (a delegation clause was

28

22

1  procedurally unconscionable when plaintiff was told to either sign an employment

2  agreement which mandated arbitration or lose his job).

3        Further, the delegation clause here was not hidden in voluminous pages or

4  small text, but was clearly printed on the first page of the Agreement.  (Tiberi Decl. Ex.

5  1, at 1;) *see Tovar v. GC Servs. Ltd. P'ship*, No. 3:21-CV-1597-CAB-BGS, 2021 WL

6  5989944, at *4 (S.D. Cal. Dec. 17, 2021) (finding a low degree of procedural

7  unconscionability where the delegation clause appeared in the first numbered

8  paragraph of the agreement in legible font); *cf. Lim*, 8 F.4th at 1001 (finding unfair

9  surprise where the delegation clause was contained "in the middle of 31 numbered

10 paragraphs, within more than nine pages of single-spaced, 10-point font").

11       Finally, the drafter of an agreement is under no obligation to specifically bring

12 an arbitration or delegation clause to the signing party's attention.  *See Lim*, 8 F.4th at

13 1001.  Thus, the Court finds that the delegation clause was neither oppressive nor an

14 unfair surprise.  *OTO*, 8 Cal. 5th at 126 ("Oppression occurs where a contract involves

15 lack of negotiation and meaningful choice, surprise where the allegedly

16 unconscionable provision is hidden within a prolix printed form." (quoting P*innacle*

17 *Museum Tower Assn. v. Pinnacle Market Development (US), LLC*, 55 Cal. 4th 223, 247

18 (2012))).

19       Substantively, Plaintiff argues the clause is unconscionable because it imposes

20 fee-splitting requirements on employees and also includes a "prevailing party"

21 provision whereby an arbitrator may award attorney's costs and fees to the prevailing

22 party and order the losing party to cover those costs.  (Suppl. Opp'n Arb. at 4.)

23       Plaintiff first argues that pre-selection of the AAA creates a business relationship

24 between Defendants and the AAA such that "AAA arbitrators may be inclined towards

25 arbitration and also towards awarding costs to the Plaintiff."  (Suppl. Opp'n Arb. at 4.)

26 However, courts have previously found arguments along these lines to be preempted

27 by the FAA.  *See Malone v. Superior Ct.*, 226 Cal. App. 4th 1551, 1569–70 (2014)

28 (holding plaintiff's argument that a delegation clause was substantively

1    unconscionable because the arbitrator had an interest in finding the agreement

2    arbitrable, i.e., being compensated for arbitrating the dispute and being considered

3    for further arbitration assignments, was preempted by the FAA as discriminating

4    against arbitration).  Thus, the Court will disregard this argument.

5         Plaintiff further argues that the prevailing party provision creates an imbalance

6    in power which suggests that provision, as applied to the delegation clause, is

7    substantively unconscionable.  (Suppl. Opp'n Arb. at 5.)  Imposing arbitration

8    expenses on an employee that they would not otherwise bear in federal court is

9    unconscionable, regardless of their ability to pay.  *See Pokorny v. Quixtar, Inc.*, 601

10    F.3d 987, 1004 (9th Cir. 2010), *overruled on other grounds by Poublon v. C.H.*

11    *Robinson Co.*, 846 F.3d 1251, 1265-66 (9th Cir. 2017); *see also Armendariz v. Found.*

12    *Health Psychcare Servs., Inc.,* 24 Cal. 4th 83, 110–11 (2000).  Thus, courts have held

13    that "[p]rovisions requiring bilateral, attorney fee shifting, *i.e.*, in which the prevailing

14    party—whether employer or employee—may be awarded fees, are unconscionable

15    when they conflict with governing statutes that allow one-way fee shifting in favor of

16    the employee." *Bermudez v. Primelending*, No. LA CV12-00987-JAK-Ex, 2012 WL

17    12893080, at *9 (C.D. Cal. Aug. 14, 2012).  Plaintiff has sought attorneys' fees and

18    costs under various California Labor Code sections which apply an asymmetric rule for

19    awarding fees, e.g., sections 226, 1194, and 2802.  (Compl. ¶¶ 41, 55, 79, 86;) s*ee*

20    *Kirby v. Immoos Fire Protection, Inc.,* 53 Cal. 4th 1244, 1251 (2012) (regarding section

21    1194); *Mills v. Facility Sols. Grp., Inc.*, 84 Cal. App. 5th 1035, 1056 n.6 (2022)

22    (regarding section 2802); *United Parcel Service Wage & Hour Cases*, 192 Cal. App.

23    4th 1425, 1437 (2011) (regarding section 226).  However, the plain language of the

24    Agreement only allows the arbitrator to "award attorneys' fees and/or costs to the

25    prevailing party *if authorized by the applicable contract, statute, or law* under which

26    the Claim is brought."  (Tiberi Decl. Ex. 1, at 3 (emphasis added).)  "Courts have found

27    that the inclusion of this limiting language in similar provisions renders the provision

28    not substantively unconscionable." *Cabanillas v. 4716 Inc.*, CV-20-00894-PHX-MTL,

1   2021 WL 3773765, at *4 (D. Az. Aug. 25, 2021) (finding an attorneys' fees provision

2   was not substantively unconscionable because the provision noted that costs and fees

3   could be recovered by the prevailing party only "to the extent permitted by applicable

4   law"); *see also Ridgeway v. Nabors Completion & Prod. Servs. Co.*, 725 F. App'x 472,

5   474 (9th Cir. 2018) ("[T]he fees and expenses provision, are not unconscionable,

6   because they contain the phrase 'except as otherwise provided by law.'").  Thus, this

7   provision is not unconscionable as written.

8           Finally, Plaintiff argues that courts have held that fee-splitting provisions can be

9   unconscionable as applied to low-income Plaintiffs, and that "Plaintiff, who was at the

10  time a Big Lots employee making fourteen dollars per hour, could not afford the filing

11  fee nor could she possibly afford paying Big Lots' attorney's fees and costs."  (Suppl.

12  Opp'n Arb. at 5.)  The California Supreme Court has held that "when an employer

13  imposes mandatory arbitration as a condition of employment, the arbitration

14  agreement or arbitration process cannot generally require the employee to bear any

15  type of expense that the employee would not be required to bear if he or she were

16  free to bring the action in court." *Armendariz*, 24 Cal. 4th at 110-11.  Applying this

17  principle, district courts have found cost-sharing provisions in employment arbitration

18  agreements are substantively unconscionable because the employer generally has far

19  greater resources and the employee should not be required to pay for the

20  opportunity to present claims.  *See, e.g., Ortolani v. Freedom Mortg. Corp.*, No. EDCV

21  17-1462-JGB-KKx, 2017 WL 10518040, at *6 (C.D. Cal. Nov. 16, 2017) (finding a fee-

22  splitting provision to be unconscionable because it "require[d] the parties to share

23  equally in the arbitration costs"); *Antonelli v. Finish Line, Inc.*, No. 5:11–cv–03874-EJD,

24  2012 WL 525538, at *5 (N.D. Cal. Feb. 16, 2012) (same); *Chavarria v. Ralphs Grocer

25  Co.*, 812 F. Supp. 2d 1079, 1088 (C.D. Cal. 2011) (same).  Under the Agreement,

26  Plaintiff's fee is capped at $300 for filing for arbitration, while "Big Lots will pay the

27  employer filing fee, AAA administrative costs and fees, the arbitrator's costs and fees,

28  and any employee filing fees that exceed $300."  (Tiberi Decl. Ex. 1, at 3.)  First, the

1  Court notes that Plaintiff was not forced to enter the Agreement here as a condition of

2  employment, an important distinction from *Armendariz*. Further, unlike in *Ortolani*,

3  *Antonelli*, and *Chavarria*, the fees are not split evenly between the Parties; rather,

4  Plaintiff's fees are capped at $300. This fee is not so different from the $350 filing fee

5  required for federal civil litigation. *See* 28 U.S.C. § 1914. Thus, while the $300 fee

6  may indicate some level of substantive unconscionability given Plaintiff's economic

7  status, it can hardly be said to be overly harsh or so one-sided as to shock the

8  conscience given that Defendants must pay the remaining costs and fees. Thus, the

9  delegation clause is not substantively unconscionable.

10                                        **CONCLUSION**

11         In accordance with the above, IT IS HEREBY ORDERED Plaintiff's Motion to

12  Remand (ECF No. 18) is DENIED. Further, Defendants' Motion to Compel Arbitration

13  (ECF No. 7) is GRANTED. This case is hereby STAYED pending the arbitrator's

14  decision concerning arbitrability. The Parties shall file a joint status report within one

15  week of the arbitrator's decision on arbitrability or by January 5, 2024, whichever is

16  sooner.

17

18

19         IT IS SO ORDERED.

20  Dated:   **September 28, 2023**

                                         Hon. Daniel J. Calabretta
21                                       UNITED STATES DISTRICT JUDGE

22

23

24

25  DJC4 – demaria23cv00296.MTR&MCA

26

27

28

                                              26